IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>JORGE MUÑOZ-RAMON,<br><br>     Defendant. | 8:13-CR-244<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the defendant Jorge Muñoz-Ramon's motion to suppress (filing 204) and the Findings and Recommendation (filing 213) of the United States Magistrate Judge, recommending that the motion to suppress be denied in its entirety. Filing 213; filing 225 at 40–42. Muñoz-Ramon has objected to those findings (filing 229), and the matter is ready for disposition. The Court has conducted a de novo review of the motion to suppress, pursuant to 28 U.S.C. § 636(b)(1). For the reasons discussed below, the Court finds that Muñoz-Ramon's objections are without merit, and they will be overruled, with one exception.

  The exception relates to the Magistrate Judge's recommendation that, should Muñoz-Ramon be found or plead guilty, he should receive an obstruction of justice enhancement for providing false testimony at the suppression hearing. At this time, the Court does not accept or reject that recommendation, but merely observes that the matter is not ripe for consideration, as Muñoz-Ramon has not been found or pleaded guilty and no sentencing has been set at this time. If this case proceeds to sentencing, the Court will reconsider the Magistrate Judge's recommendation, and make its own finding at that time. For now, Muñoz-Ramon's objection on this point is overruled, but without prejudice to a later challenge at sentencing.

**FACTUAL BACKGROUND**

  Detective Robert Branch, Jr., of the Omaha Police Department testified at the suppression hearing. Filing 225 at 6–7. In May 2013, Branch was working with the narcotics unit to investigate methamphetamine distribution in the Omaha area. On May 24, the police arranged for a confidential witness to meet with a suspected supplier of methamphetamine at an Omaha hotel. The witness was supplied with money that he was to use to pay a drug debt

allegedly owed to the supplier. Filing 225 at 7. The hotel room to be used for the meeting was a suite with a living room and a separate kitchen and bedroom. The living room, where the meeting was to occur, was equipped with audio and visual surveillance equipment. Filing 225 at 7–10.

Muñoz-Ramon arrived at the hotel room and met with the witness. As soon as Muñoz-Ramon accepted the money from the witness, several officers entered the room at once, commanded Muñoz-Ramon to get to the floor, and placed him in handcuffs. Filing 225 at 8, 10–13. While this was occurring, Branch was in the bedroom area of the suite, "monitoring the interaction between the cooperating witness and Mr. Muñoz." Filing 225 at 12.

The other officers then escorted Muñoz-Ramon into the bedroom area, where Branch conducted an interview. Branch testified that he first told Muñoz-Ramon why he was under arrest, obtained some biographical information from him, and then read him his *Miranda* rights. Branch stated that he read from the standard Omaha Police Department rights advisory form. Filing 225 at 13. After reading each portion of the advisement, Branch waited for Muñoz-Ramon to state that he understood, then Branch wrote "yes" next to each right. Filing 225 at 26; filing 206 at 3. Branch testified that Muñoz-Ramon then acknowledged that he understood his rights and agreed to speak with Branch. Filing 225 at 30. According to Branch, Muñoz-Ramon never requested an attorney during this time. Filing 225 at 11.

Branch did not have Muñoz-Ramon sign or initial the rights advisory form, and their interview was not recorded. Filing 225 at 14–19. When questioned on this point, Branch explained that he did not know why he had not recorded the interview or obtained Muñoz-Ramon's signature; he simply had not done so. Filing 225 at 14–20. Branch testified that sometimes interviews were recorded, and sometimes suspects were asked to sign or initial *Miranda* waivers, but that there was no policy or procedure in place that required such measures, and that his practice varied from case to case. Filing 225 at 14–26.

Branch read the *Miranda* advisory and conducted the interview in English. Filing 225 at 14. English is a second language for Muñoz-Ramon, Spanish being his primary language. Filing 225 at 3, 33. But Branch testified that he and Muñoz-Ramon were able to converse in English without difficulty. Filing 225 at 14, 26. Following the interview at the hotel, Branch drove around Omaha with Muñoz-Ramon in his car, and Muñoz-Ramon identified various residences involved in the distribution of methamphetamine. Filing 225 at 28. This process took "a couple of more hours," and throughout this, Branch testified that they had no problems communicating. Filing 225 at 28. And previous surveillance and subsequent investigations confirmed that the residences Muñoz-Ramon identified were,

in fact, connected to the methamphetamine operation under investigation. Filing 225 at 28–29. Finally, Branch later interviewed Muñoz-Ramon with his attorney present, and at that time, no interpreter was used. Filing 225 at 29.

Muñoz-Ramon also testified at the suppression hearing. He stated that when he was first placed in handcuffs in the living room, Branch asked him his name, and Muñoz-Ramon responded that he wanted to speak with an attorney. Filing 225 at 33–34. Muñoz-Ramon then testified, in response to questions by his counsel:

> Q. And when you asked for a lawyer, then what did he say?
> A. That never mind at that point because they already had me and I was risking many years in prison.
> Q. And then what happened?
> A. I told him again that I wanted to talk to an attorney.
> Q. And what did -- and how did he respond?
> A. Quiet, and he pointed me towards the bedroom.

Filing 225 at 34. Muñoz-Ramon also claimed that Branch never read a *Miranda* advisory, and that he answered Branch's questions because he felt intimidated. Filing 225 at 35.

Muñoz-Ramon utilized a Spanish-language interpreter at the suppression hearing. Filing 225 at 3, 33. On cross-examination, Muñoz-Ramon stated that he had "[a] little" difficulty communicating with Branch, but that he would ask for clarification when he didn't understand, and agreed with the government's assertion that "essentially, there [were] no communication problems" during their conversation. Filing 225 at 36–37.

## ANALYSIS

Muñoz-Ramon argues that his statements to the police must be suppressed because (1) he was questioned without an attorney while under arrest and without being read his *Miranda* rights; (2) his request to speak with an attorney was not honored; and (3) any waiver of his *Miranda* rights and any statements to police were involuntary. The Magistrate Judge rejected each argument. The Magistrate Judge found that Branch's testimony was credible and that Muñoz-Ramon's was not. Therefore, he found that Branch did read Muñoz-Ramon a *Miranda* advisory, that Muñoz-Ramon never requested an attorney, and that Muñoz-Ramon's statements to the police were voluntary. Filing 225 at 41–42. So, the Magistrate Judge recommended that the motion to suppress be denied. Filing 225 at 42. As noted above, the Magistrate Judge further found that Muñoz-Ramon had

provided false testimony at the hearing, and that the motion to suppress was frivolous, and recommended that, if convicted, Muñoz-Ramon should receive an obstruction of justice enhancement at sentencing. Filing 225 at 42.

Muñoz-Ramon has objected to each of these findings and renewed his arguments that were before the Magistrate Judge. He also objects to the recommendation that he receive an obstruction enhancement. The Court considers each objection in turn.

### I. *Miranda* Advisory and Request to Speak to an Attorney

Officers must provide *Miranda* warnings to suspects in custody because the inherently coercive nature of custodial interrogation blurs the line between voluntary and involuntary statements. *United States v. Diaz*, 736 F.3d 1143, 1148 (8th Cir. 2013). And if a person in custody asks to speak with an attorney, the police must stop further interrogation until an attorney is present. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). There is no dispute in this case that Muñoz-Ramon was in custody and subject to interrogation. The issues are whether he was properly advised of his rights and whether he invoked the right to speak with an attorney.

This Court has reviewed the testimony from the suppression hearing, and like the Magistrate Judge (who saw and observed the witnesses), finds the testimony of Officer Branch to be credible, and the testimony of Muñoz-Ramon to not be credible. Specifically, the Court credits Branch's testimony that he advised Muñoz-Ramon of his *Miranda* rights, that Muñoz-Ramon agreed to waive those rights and speak to Branch, and that Muñoz-Ramon did not ask to speak to an attorney.

Muñoz-Ramon makes much of the fact that Branch did not have him sign or initial the advisory form and that Branch did not make a recording of the interview. But neither of these measures, while helpful, are constitutionally required. *See United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005). "The Supreme Court has never held that an accurate oral warning may not suffice to inform a suspect of his constitutional rights. Instead, the Court has held that waiver is not a question of form, but of substance." *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005). There is no requirement that a waiver be in writing, and the absence of a signed waiver is not conclusive evidence on the issue of whether a defendant waived his rights. *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002); *see also*, *Williams*, 429 F.3d at 772; *United States v. Mears*, 614 F.2d 1175, 1179 (8th Cir. 1980).

That said, the absence of a written waiver (or recording) may affect the weight that the Court gives the testimony of the defendant and the officer. *United States v. Montieth*, 662 F.3d 660, 669 (4th Cir. 2011). And the Court

- 4 -

has considered this factor in making its assessment of the witnesses' credibility. Branch explained, consistently, that the Omaha Police Department has no set policy or procedure to obtain a signature or make a recording, and candidly stated that, while he sometimes does either or both of these things, he does not always do so. In this case, the Court does not find the absence of a recording or signed waiver to detract from Branch's credibility.

Muñoz-Ramon also points to another rights advisory form, filled out by Branch and used during an interview of another suspect that same day. During that interview, Branch had the suspect initial each question on the rights advisory form. Filing 225 at 22–24; filing 206 at 5. But as Branch testified, whether an officer decides to obtain a written waiver or the suspect's initials depends on the circumstances of the interview. Filing 225 at 16, 18, 22–24, 25–26. And, Branch explained, "sometimes time is of the essence in order to get to the next location where a stash house or a supply of methamphetamine may be at." Filing 225 at 18. This explanation is consistent with the circumstances confronting Branch at the time. After the interview, Branch drove Muñoz-Ramon around the city and identified at least two residences involved in the methamphetamine operation, one of which was then searched by police pursuant to a search warrant. Filing 225 at 28–29.

The defendant has not argued that the advisory was deficient because it was in English, and not Spanish. *See* filing 225 at 38. And as the record above demonstrates, there was no substantial language barrier in this case. Additionally, at the government's request (and with no objection by the defense), the Magistrate Judge took judicial notice of the pretrial services report, in which Muñoz-Ramon was interviewed by a pretrial services officer about his family, work and school history, and other biographical details. Filing 225 at 30, 37; filing 12. The pretrial officer did not use an interpreter for that hearing, and was nonetheless able to obtain a brief but detailed account of Muñoz-Ramon's personal history. Filing 12.

In short, the Court finds that Branch properly advised Muñoz-Ramon of his rights, and that Muñoz-Ramon did not invoke his right to speak with counsel.

## II. Voluntariness of Waiver and Statements

Muñoz-Ramon next argues that, even if he was advised of his *Miranda* rights, any waiver of those rights on his part was the involuntary product of police coercion, and so were any subsequent statements. A statement or waiver is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically

impair his capacity for self-determination. *United States v. Vega*, 676 F.3d 708, 718 (8th Cir. 2012). The inquiry is essentially the same for both the *Miranda* waiver and the inculpatory statements.[1] *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013). To determine whether the statement and waiver were voluntary, the Court looks to the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused. *Vega*, 676 F.3d at 718. The Court considers, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition. *Id.* The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenge statements were voluntary. *Id.*

There is nothing about Muñoz-Ramon's personal characteristics that made him particularly susceptible to police coercion. Nor has Muñoz-Ramon identified any such characteristics. And while the circumstances of the interview involved some coercive pressures—as with nearly any interview of this nature—those pressures were not so great as to overbear Muñoz-Ramon's will. Moments before the interview, Muñoz-Ramon had been surprised by several officers shouting at him to get on the floor. And he was handcuffed throughout the interview. Filing 225 at 11–12.

But there were no other circumstances that would suggest a particularly coercive environment. Branch testified that he did not make any threats or promises, and spoke to Muñoz-Ramon in a calm manner. There is no evidence that Branch employed any deception. The atmosphere was "police-dominated," but not unduly so. Muñoz-Ramon was interviewed alone in a bedroom at the hotel. Other officers came in and out of the bedroom at times, but the interview was conducted solely by Branch. And while Branch was armed, his weapon was holstered. Filing 225 at 27–28. Finally, before making any statements, Muñoz-Ramon was advised of his *Miranda* rights, which he agreed to waive. While this factor is not dispositive, it is important in showing voluntariness. *Vega*, 676 F.3d at 718. Considering the totality of

---

[1] In addition to being voluntary, a valid waiver must be knowing and intelligent. *United States v. Castro-Higuero*, 473 F.3d 880, 885–86 (8th Cir. 2007). A waiver is knowing and intelligent if it is made with a full awareness of both the nature of the right being abandoned and the consequences of that decision. *Id.* at 886. Muñoz-Ramon argues only that any waiver was not voluntary; he does not argue that it was not knowing and intelligent. In any event, the Court finds that Branch did read Muñoz-Ramon a proper statement of his rights, and that Muñoz-Ramon understood English well enough to understand those rights. *See* filing 225 at 37, 38. Branch testified that Muñoz-Ramon did not appear to be under the influence of drugs or alcohol, appeared to be of average intelligence, and gave responses that were consistent with the questions being asked. Filing 225 at 26–28. Thus, as to the *Miranda* waiver, only voluntariness is at issue.

the circumstances, the Court finds that Muñoz-Ramon's waiver and statements were voluntary.

### III. The Obstruction of Justice Enhancement

Finally, Muñoz-Ramon objects to the Magistrate Judge's recommendation that, if he is sentenced, he should receive an enhancement for the obstruction of justice. Under the Sentencing Guidelines, a defendant may be found to have obstructed justice by committing, suborning, or attempting to suborn perjury. U.S.S.G. § 3C1.1 cmt. n.4(b). Before imposing this enhancement, the Court must itself conduct an independent evaluation and determine whether the defendant committed perjury. *United States v. Yarrington,* 634 F.3d 440, 452 (8th Cir. 2011). And to conclude that the defendant committed perjury, the Court must find, by a preponderance of the evidence, that the defendant gave false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. *Id.*

As noted above, this matter is not ripe for consideration at this time. If this case proceeds to sentencing, the Court will make its own finding at that time. For now, the Court will defer accepting or rejecting the Magistrate Judge's recommendation, and Muñoz-Ramon's objection on this point is overruled, without prejudice to his challenging the matter at sentencing.

THEREFORE, IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (filing 213) are accepted, except as to the obstruction of justice enhancement. The Court defers consideration of that matter until sentencing.

2. Muñoz-Ramon's motion to suppress (filing 204) is denied.

3. Muñoz-Ramon's objections (filing 229) are overruled, except for the objection regarding the obstruction enhancement, which is overruled without prejudice to Muñoz-Ramon challenging the enhancement at sentencing.

- 8 -

Dated this 11th day of April, 2014.

BY THE COURT:

_____
John M. Gerrard
United States District Judge